UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

AKANIYENE WILLIAM ETUK,

                        Plaintiff,                    **24-CV-04989 (JHR) (VF)**

           -against-                      **REPORT &**
                                              **RECOMMENDATION**

NEW YORK CITY POLICE DEPARTMENT, et al.,

                      Defendants.

-----------------------------------------------------------------X
**VALERIE FIGUEREDO, United States Magistrate Judge**

**TO: THE HONORABLE Jennifer H. Rearden, United States District Judge.**

Plaintiff Akaniyene William Etuk, proceeding pro se, commenced this action on June 24, 2024, against the New York City Police Department ("NYPD") and John Doe police officers. ECF No. 1. On August 16, 2024, Plaintiff filed an amended complaint, dropping the NYPD as a defendant and adding the City of New York as a defendant. ECF No. 7. On January 2, 2025, Plaintiff filed a second amended complaint, adding claims against individual NYPD officers Abdoulaye Bah, Muhammad Molla, Lieutenant David Pabon, Peter Esposito, Ely Gonzalez, Ana Garcia, Melba Cespedes, Christian Cacace, and Anajess Alvarez (collectively, the "Individual Officers"). ECF No. 23. Plaintiff asserts claims for violations of his constitutional rights stemming from an encounter on March 9, 2024. Pending before the Court are motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), filed by the City (ECF No. 25) and the Individual Officers (ECF No. 47). For the reasons set forth below, I respectfully recommend that the motions be **GRANTED**, but that Plaintiff be afforded leave to amend certain claims in his second amended complaint.

**FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiff alleges that on March 9, 2024[2], Plaintiff was "traveling on a train" in the Bronx,

New York. ECF No. 23 at 3.[3] Plaintiff was traveling with his vaccinated, registered service

animal who was "providing essential services" and is trained to assist Plaintiff with his "severe

visual impairment and PTSD [post-traumatic stress disorder]." ECF No. 1 at 8-9; ECF No. 7 at 5;

ECF No. 52 at 6. Plaintiff was stopped by "NYPD officers at the 161 Street" subway station

"without Plaintiff's permission or contractual basis." ECF No. 23 at 4. The "NYPD officers

forced Plaintiff to identify himself." Id.; ECF No. 1 at 8; ECF No. 7 at 5. Plaintiff alleges that the

"NYPD officers did not show their identification cards" (ECF No. 1 at 8; ECF No. 7 at 5) and

---

[1] For purposes of the motions to dismiss, the Court accepts as true all well-pled factual allegations in the second amended complaint. See JPMorgan Chase Bank v. Cook, 318 F. Supp. 2d 159, 161 (S.D.N.Y. 2004) ("For purposes of [a] motion to dismiss, the facts in the complaint must be accepted as true."). Because Plaintiff is pro se, the Court also considers facts pled in the prior amended complaints, as well as the facts included in Plaintiff's filings in opposition to the motions to dismiss. See Smith v. New York City Dep't of Educ., No. 18-CV-8545 (PGG), 2019 WL 6307471, at *1 n.2 (S.D.N.Y. Nov. 25, 2019) (collecting cases); Brooks v. Jackson, No. 11-CV-6627 (JMF), 2013 WL 5339151, at *3 (S.D.N.Y. Sept. 23, 2013) ("[B]ecause a *pro se* plaintiff's allegations must be construed liberally, it is appropriate for a court to consider factual allegations made in a *pro se* plaintiff's opposition memorandum, as long as the allegations are consistent with the complaint."). Plaintiff's complaint, filed on June 24, 2024, discusses one incident on March 9, 2023. ECF No. 1 at 2-25. In that same filing, Plaintiff also includes a complaint regarding an incident that occurred on August 30, 2023. Id. at 26-38. Because the August 30, 2023 incident appears to be a separate incident that is the subject of a different suit in this Court (see Etuk v. City of New York, No. 24-CV-04962 (GHW) (SDA) (S.D.N.Y. June 7, 2025)), I address only the March 9 incident.

[2] Plaintiff's second amended complaint, Defendants' motions to dismiss, and Plaintiff's opposition to Defendants' motions to dismiss state that the stop at issue occurred on March 9, 2024. ECF No. 23 at 3; ECF No. 26 at 8; ECF No. 30 at 1; ECF No. 52 at 2; ECF No. 53 at 1. Plaintiff's complaint and amended complaint state that the stop occurred on March 9, 2023. ECF No. 1 at 5, 7, 9; ECF No. 7 at 5. For purposes of assessing whether Plaintiff has pled a claim, the year in which the incident occurred does not change the analysis.

[3] The page numbers referenced herein for citations to the electronic docket ("ECF") are to the electronically generated pagination in those documents.

"approached Plaintiff with firearms" (ECF No. 23 at 4), forcing Plaintiff to engage with the officers "under duress" (ECF No. 1 at 8; ECF No. 7 at 5; ECF No. 23 at 4). Plaintiff and his service animal were "transported to a location different from [Plaintiff's] intended point of travel" (ECF No. 1 at 8; ECF No. 7 at 5), where Plaintiff was "injected with a substance without [his] consent" (ECF No. 1 at 8; ECF No. 7 at 5; ECF No. 23 at 4).

Plaintiff alleges that "NYPD officers" issued him a summons "without lawful authority." ECF No. 1 at 8; ECF No. 7 at 5; ECF No. 23 at 4. According to Plaintiff, "NYPD officers used physical force" against Plaintiff and his service animal (ECF No. 1 at 8; ECF No. 7 at 5; ECF No. 23 at 4), "choking the animal with a rod and rope, holding Plaintiff at gunpoint, and causing him physical injury," resulting in a "lasting strain and numbness" in Plaintiff's "left wrist to his neck requiring therapy." ECF No. 53 at 4. Plaintiff is "still experiencing numbness from his left wrist [ ] to his neck region." Id.

On June 24, 2024, Plaintiff commenced this action against the NYPD and John Doe officers. ECF No. 1. Plaintiff filed an amended complaint on August 16, 2024, which replaced the NYPD with the City as a Defendant. ECF No. 7. Pursuant to the Court's Valentin order (ECF No. 10), on November 27, 2024, the City identified Abdoulaye Bah, Muhammad Molla, Lieutenant David Pabon, Peter Esposito, Ely Gonzalez, Ana Garcia, Melba Cespedes, Christian Cacace, and Anajess Alvarez as the John Doe officers involved in the March 9 incident (ECF No. 18). On December 16, 2024, the City identified Raju Ahmed as an additional John Doe officer. ECF No. 21. Following the Court's direction (ECF No. 22), on January 2, 2025, Plaintiff filed a second amended complaint naming the John Doe officers identified by the City as Defendants, except for Raju Ahmed (ECF No. 23).

Construing Plaintiff's claims liberally, as the Court is required to do, Plaintiff appears to assert six claims pursuant to 42 U.S.C. § 1983: a claim for violation of the right to travel in Count I; a claim for violation of the right to privacy and an improper seizure in violation of the Fourth Amendment in Count II; an excessive-force claim in Count III; a false-arrest[4] claim in violation of the Fourth Amendment in Count IV; and a claim for violation of the Due Process Clause in Count VI. Plaintiff also brings a claim for violation of the Americans with Disabilities Act under 42 U.S.C. § 12132 ("ADA") in Count V.

The City moved to dismiss the second amended complaint on March 7, 2025. ECF No. 25. The Individual Officers moved to dismiss the second amended complaint on June 7, 2025. ECF No. 47. By order dated August 22, 2024, the motions to dismiss were referred to the undersigned for a report and recommendation. See ECF No. 9.

## **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must plead 'enough facts to state a claim to relief that is plausible on its face.'" Green v. Dep't of Educ. of City of N.Y., 16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 663, 678 (2009). In determining if a claim is sufficiently plausible to withstand dismissal, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v.

---

[4] Although Plaintiff refers to it as a "false imprisonment" claim (ECF No. 23 at 5), claims of false arrest and false imprisonment are "analyzed identically." Delgado v. City of New York, No. 19-CV-6320 (JHR), 2023 WL 6390134, at *7 n.9 (S.D.N.Y. Oct. 2, 2023) (quoting Feinberg v. City of New York, No. 99-CV-12127 (RC), 2004 WL 1824373, at *2 (S.D.N.Y. Aug. 13, 2004)) (noting that false arrest and false imprisonment are "synonymous").

4

Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

The Court is obliged to construe pro se pleadings liberally, Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they suggest." Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)); McKithen v. Brown, 481 F.3d 89, 96 (2d. Cir. 2007) (holding that pleadings and allegations of a pro se plaintiff must be construed liberally in Rule 12(b)(6) motions). But the "special solicitude" afforded pro se litigants, Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) (internal quotation marks and citation omitted), has its limits—"a pro se complaint must state a plausible claim for relief." Hogan v. Fisher, 738 F.3d 509, 515 (2d Cir. 2013); see also Morren v. N.Y. Univ., No. 20-CV-10802 (JPO) (OTW), 2022 WL 1666918, at *12 (S.D.N.Y. Apr. 29, 2022) ("[T]he Court may not invent factual allegations that a plaintiff has not pled.") (internal quotation marks and citations omitted). The "factual allegations [must be] sufficient to raise a right to relief above the speculative level." Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (internal quotation marks and citations omitted). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citations omitted). Because issues of fact, credibility, and the weight of the evidence are not properly considered on a motion to dismiss, the Court has not considered them here. See Morren, 2022 WL 1666918, at *12.

**DISCUSSION**

A.  Section 1983 Claims

Section 1983 is not "a source of substantive rights[,]" but "provides a method for vindicating federal rights elsewhere conferred." Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004) (internal citations and quotations omitted). "To state a claim under § 1983, a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." Collymore v. City of New York, 767 F. App'x 42, 45 (2d Cir. 2019) (citing Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87-88 (2d Cir. 2015)).

At the outset, the Individual Officers argue that Plaintiff has not included any factual allegations against any specific officer and instead "lumps" all of the officers together. ECF No. 48 at 20. It is true that "[a] § 1983 plaintiff must also allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation." McDaniel v. New York, No. 19-CV-7680 (CM), 2019 WL 4242060, at *2 (S.D.N.Y. Sept. 6, 2019). A plaintiff cannot merely name defendants in the caption of the complaint and not mention the defendants in the body of the complaint. See, e.g., Casino v. Rohl, No. 14-CV-2175 (SJF) (GRB), 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (dismissing claim for failing to plead personal involvement where "defendant is nowhere mentioned or referenced in the body of the amended complaint"). Instead, the plaintiff must "explain[] the nature of [the defendants] involvement in violating his rights." Sisk v. MCC, No. 20-CV-10293 (LLS), 2021 WL 412487, at *3 (S.D.N.Y. Feb. 3, 2021). In other words, the complaint must say "what [that specific defendant] did to the plaintiff." Griffin v. Kings Cnty. Dist. Attorney's Off., No. 20-CV-2387 (AMD) (LB), 2020 WL 5211049, at *4 (E.D.N.Y. Aug. 31, 2020).

6

Plaintiff does not mention or describe any Individual Officer's participation in the incident on March 9, alleging generally that "NYPD officers" threatened him, falsely arrested him, and used excessive force against him and his service animal. ECF No. 23 at 4. Plaintiff must provide details regarding each Individual Officer's role in the incident, such as what each specific officer did (or failed to do) and the factual circumstances around that conduct. See, e.g., Jean v. Human Resources Admin., No. 24-CV-5401 (LLS), 2025 WL 2051019, at *3 (S.D.N.Y. July 21, 2025) (allowing plaintiff to replead to allege facts "about when and where the events giving rise to his claims took place, and what the officer did or failed to do that violated [p]laintiff's rights"); Cora v. Child. & Youth/Sam Inc., No. 24-CV-6235 (LTS), 2025 WL 104628, at *3 (S.D.N.Y. Jan. 13, 2025) (allowing plaintiff to replead to "describe the alleged assault, including the date of the assault, who assaulted him, and the conduct of the security guards before, during, and after the assault"). If Plaintiff is unable to provide the name of the specific officer, "plaintiff should provide descriptive information regarding each officer, such as clothing, gender, height, weight, and hair color." Bolden v. New York City Police Dep't, No. 07-CV-0057 (BMC), 2007 WL 1202775, at *2 (E.D.N.Y. Apr. 20, 2007) (citation omitted).

Because there are no facts showing how each Individual Officer was personally involved in the incident, each claim against the Individual Officers fails for this reason. However, because Plaintiff may be able to correct this deficiency, I recommend that Plaintiff be given leave to replead to include details about each Individual Officer's personal involvement for any claim that is not dismissed with prejudice. See, e.g., Reed v. Royce, No. 21-CV-8002 (NSR), 2022 WL 785218, at *1 (S.D.N.Y. Mar. 15, 2022) (dismissing claims where "[p]laintiff does not allege any facts showing how [defendant] was personally involved in the events underlying his claims" but granting leave to amend); Harris v. Harris, No. 19-CV-11658 (CM), 2020 WL 1140745, at *3

7

(S.D.N.Y. Mar. 9, 2020) (dismissing claims but granting "[p]laintiff leave to submit an amended complaint to state facts showing how the police officers were personally involved in the events giving rise to his claims").[5]

### 1. *Count I: Violation of the Right to Travel*

Plaintiff alleges that Defendants violated his right to travel freely within the United States (ECF No. 23 at 4), because he was "forcibly detained while using the subway system" (ECF No. 52 at 3). "Freedom to travel throughout the United States has long been recognized as a basic right under the Constitution," and it includes the right to intrastate travel. Five Borough Bicycle Club v. City of New York, 483 F. Supp. 2d 351, 361-62 (S.D.N.Y. 2007), aff'd by, 308 F. App'x 511 (2d Cir. 2009) (alterations and citation omitted). "Traditionally when discussing the right to travel—whether intrastate or interstate—a court will look at a particular statute or regulation, not a one-off incident[.]" Tew v. Town of Stony Point, No. 22-CV-6148 (KMK), 2023 WL 6146651, at *9 n.4 (S.D.N.Y. Sept. 20, 2023) (citing Five Borough Bicycle Club, 483 F. Supp. 2d at 362). Courts assessing a right to travel claim will therefore consider whether a "statute implicates the constitutional right to travel when it actually deters such travel, or when impedance of travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right." Five Borough Bicycle Club, 483 F. Supp. 2d at 362 (internal quotation marks, citations, and alterations omitted).

---

[5] Although the Individual Officers also contend that they are entitled to qualified immunity (ECF No. 48 at 21-23), I do not address the argument because Plaintiff has not adequately alleged each Individual Officer's personal involvement and, as will be discussed, he also has not pled a violation of a constitutional right. See Warren v. City of New York, No. 18-CV-4410 (ALC), 2020 WL 353772, at *2 n.1 (S.D.N.Y. Jan. 21, 2020) (declining to address qualified immunity where plaintiff "has not adequately alleged that any of the [d]efendants violated his constitutional rights").

Plaintiff does not point to any law, statute, or policy that he claims has impeded or deterred his ability to travel, whether interstate or intrastate. Instead, Plaintiff's claim focuses solely on a single incident that occurred on March 9. Plaintiff has thus failed to state a plausible right to travel claim. See Tew, 2023 WL 6146651, at *9 n.4 (explaining that allegations where plaintiff alleged no law or policy that implicated his right to travel but focused only on a "one-off incident" involving an alleged false arrest did not state a plausible right to travel claim).

Plaintiff's complaint implies that he was unable to continue his travel on the subway due to the arrest (ECF No. 1 at 8; ECF No. 7 at 5), which is more akin to an illegal seizure than an infringement of the right to travel. Johnson El v. Bird, No. 19-CV-5102 (CS), 2020 WL 5124920, at *5 n.8 (S.D.N.Y. Aug. 31, 2020) ("To the extent [p]laintiff means to argue that traffic enforcement violates his right to travel, that claim is dismissed as frivolous."); Wellington v. Foland, No. 19-CV-0615, 2019 WL 3315181, at *6 (N.D.N.Y. July 24, 2019), report and recommendation adopted, 2019 WL 6485157 (N.D.N.Y. Dec. 3, 2019) ("Plaintiff's allegations regarding his right to travel relate to the traffic stops and subsequent arrests, which is akin to his illegal search and seizure claim.").

Further, Plaintiff's conclusory allegation that the "Defendants' actions were intended to and did obstruct his freedom of movement" (see ECF No. 53 at 3) is insufficient to plausibly allege a claim because there are no factual allegations demonstrating how his freedom of movement was impeded separate and distinct from his arrest. See Etuk v. City of New York, No. 24-CV-04962 (GHW) (SDA), 2025 WL 1785958, at *4 (S.D.N.Y. June 7, 2025), report and recommendation adopted, 2025 WL 1784813 (S.D.N.Y. June 27, 2025) (dismissing plaintiff's claim for violation of right to travel where plaintiff "has not alleged any facts to show how his arrest on the train platform amounted to a restriction on his right to travel"); Kirch v. Liberty

9

Media Corp., 449 F.3d 388, 398 (2d Cir. 2006) ("[C]onclusory allegations or legal conclusions

masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.") (citation

omitted).

Therefore, I recommend that Plaintiff's Section 1983 claim in Count I for violation of the

right to travel be dismissed. Because leave to amend would be futile, I recommend that the

dismissal be with prejudice. Caddick v. Pers. Co. I LLC, No. 16-CV-7326 (ALC), 2018 WL

3222520, at *8 n.5 (S.D.N.Y. June 29, 2018) (citing Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d

Cir. 2000)) (dismissing claim with prejudice where leave to amend was futile).

2. *Count II: Violation of the Right to Privacy*

Plaintiff alleges a violation of his right to privacy because "Plaintiff was forced to

identify himself under duress, and his personal and medical information was shared between

agencies without his consent." ECF No. 52 at 3. "To establish a violation of the constitutional

right to privacy, a plaintiff must first show that [he] had a privacy interest—that is, a 'reasonable

expectation of privacy'—in the information that was disclosed." Rutherford v. Katonah-

Lewisboro Sch. Dist., 670 F. Supp. 2d 230, 239 (S.D.N.Y. 2009) (citing Nixon v. Adm'r of Gen.

Servs., 433 U.S. 425, 457 (1977)). "'Although it is fundamental, the constitutional right to

privacy is not absolute.' Instead, a 'constitutional violation only occurs when the individual's

interest in privacy outweighs the government's interest in breaching it.'" Williams v. City of

New York, No. 20-CV-516 (MKV), 2021 WL 4267736, at *3 (S.D.N.Y. Sept. 20, 2021)

(quoting Hancock v. Cnty. of Rensselaer, 882 F.3d 58, 66 (2d Cir. 2018)).

"[T]he interest in the privacy of medical information will vary with the condition."

Matson v. Bd. of Educ. of City Sch. Dist. of New York, 631 F.3d 57, 64 (2d Cir. 2011) (internal

quotation marks and citation omitted). Generally, the Second Circuit "has declined to extend this

10

privacy right to serious medical conditions that do not lead to societal discrimination or intolerance." Crosby v. Petermann, No. 18-CV-9470 (JGK), 2020 WL 1434932, at *10 (S.D.N.Y. Mar. 24, 2020); see also Matson, 631 F.3d at 64 (explaining that more serious medical conditions are those so "excruciatingly private and intimate in nature" that they are "likely to provoke an intense desire to preserve one's medical confidentiality") (internal alterations and citation omitted). Additionally, Plaintiff must allege that the information in which he has a privacy interest was actually disclosed. Simon v. N.Y.C. Dep't of Corr., No. 12-CV-8624 (JMF), 2013 WL 4792840, at *3 (S.D.N.Y. Aug. 29, 2013) ("Because [p]laintiff has not alleged that [d]efendants disclosed any confidential medical information, he has not stated a claim for violation of his Fourteenth Amendment right to privacy.").

Beginning with Plaintiff's claim that he should not have had to identify himself to the NYPD officers (ECF No. 23 at 4-5), Plaintiff does not have a privacy interest in his name. Doe v. Pataki, 3 F. Supp. 2d 456, 467 (S.D.N.Y. 1998) (first citing United States v. Dionisio, 410 U.S. 1, 14 (1973); and then citing Doe v. City of New York, 15 F.3d 264, 268 (2d Cir. 1994)) ("[O]ne's name, physical appearance, and criminal history are all matters of public record in which one has no privacy interest[.]"); Estrella v. Menifee, 275 F. Supp. 2d 452, 458 (S.D.N.Y. 2003) (finding no right to privacy claim where "[m]ost, if not all, of the information to be included in the notice are matters of public record" including prisoner's name and prisoner's criminal history); Zalewski v. City of New York, No. 13-CV-7015 (ARR) (PK), 2018 WL 5113137, at *9 (E.D.N.Y. Oct. 19, 2018) (finding plaintiff had no "clearly established First Amendment right to refuse to identify himself at the precinct") (internal quotation marks and citation omitted). Plaintiff thus had no right to refuse to provide his name and identification to the officers.

11

Turning to Plaintiff's contention concerning his medical information, Plaintiff has not identified the information in which he claims a privacy interest. Nowhere does Plaintiff specifically identify a medical condition that he claims was confidential and nor does he explain the nature of the information he wished to keep private. Without facts concerning the medical condition, the Court cannot assess whether Plaintiff has a valid privacy interest in maintaining the confidentiality of the condition. See Arroyo v. Does #1-#4, No. 21-CV-10823 (LTS), 2022 WL 161478, at *5 (S.D.N.Y. Jan. 18, 2022) (dismissing right to privacy claim where plaintiff "does not include facts about the nature of the medical information that he wished to keep confidential, and the strength of his privacy interest is thus unclear"); Forrest v. City of New York, No. 21-CV-10152 (LJL) (BCM), 2023 WL 2432493, at *10 (S.D.N.Y. Feb. 1, 2023), report and recommendation adopted, 2023 WL 2433115 (S.D.N.Y. Mar. 9, 2023) (dismissing right to privacy claim where plaintiff pleads "no facts about the nature of the medical information that he wished to keep confidential, making it impossible for the Court to evaluate the strength of his privacy interest") (internal quotation marks and citation omitted).

Additionally, Plaintiff has not explained the context in which his "personal and medical information was shared between agencies without his consent." ECF No. 52 at 3. The Court therefore cannot properly weigh the government's interest in disclosure. If Plaintiff's medical information was shared in connection with his arrest, "prison officials can impinge [on the right to privacy] if their actions are reasonably related to legitimate penological interests." Williams v. City of New York, No. 21-CV-1083 (PGG) (KHP), 2022 WL 21828497, at *18 (S.D.N.Y. Aug. 5, 2022). Conversely, the sharing of Plaintiff's medical information, when it "does not involve penological interests," violates the right to privacy where the government's "action was so arbitrary as to shock the conscience." Hancock, 882 F.3d at 66 (internal quotation marks and

citation omitted). Because there are no facts from which to assess when and how Plaintiff's information was disclosed, Plaintiff has failed to state a claim. See, e.g., Jones v. Quinones, No. 19-CV-5524 (NSR), 2021 WL 1178092, at *3 (S.D.N.Y. Mar. 26, 2021) (dismissing right to privacy claim where plaintiff "fails to allege any facts suggesting that the examinations were not reasonably related to a legitimate penological interest"); Milner v. Mulligan, No. 16-CV-1857, 2016 WL 7246069, at *3 (D. Conn. Dec. 15, 2016) (dismissing right to privacy claim where plaintiff "fails to assert facts indicating that the disclosure was made in a manner unrelated to legitimate penological interests").

Moreover, if the Court assumes that the medical condition in which Plaintiff claims a privacy interest is his "severe visual impairment and PTSD" (ECF No. 52 at 6), it is unlikely that Plaintiff will be able to establish a privacy interest in those conditions. Hancock, 882 F.3d at 66. Courts in this Circuit have found a privacy interest in an individual's HIV status and transsexualism, Matson, 631 F.3d at 64-68, an individual's neuropsychological and psychological evaluations, W.A. v. Hendrick Hudson Cent. Sch. Dist. & Kathleen Coughlin, No. 14-CV-8093 (KMK), 2016 WL 1274587, at *5 (S.D.N.Y. Mar. 31, 2016), and a diagnosis of sickle cell anemia, Fleming v. State Univ. of New York, 502 F. Supp. 2d 324, 343 (E.D.N.Y. 2007). But courts in this Circuit have declined to find a privacy interest in medical conditions that are less stigmatizing, such as fibromyalgia, Matson, 631 F.3d at 67-68, bipolar disorder, Dash v. Doe, No. 19-CV-414 (GBD) (JLC), 2020 WL 3057133, at *3 (S.D.N.Y. June 9, 2020), Hepatitis C, Watson v. Wright, No. 08-CV-62, 2010 WL 55932, at *1 (N.D.N.Y. Jan. 5, 2010), and disability-related medical information, Smith v. Hogan, No. 10-CV-1025, 2011 WL 4433879, at *7 (D. Conn. Sept. 22, 2011). Because severe visual impairment and PTSD are unlikely to "lead to societal discrimination or intolerance," Crosby, 2020 WL 1434932, at *10, it

13

is unlikely that Plaintiff can allege a privacy interest in disclosure of those conditions. See

Williams, 2022 WL 21828497, at *18 (dismissing right to privacy claim based on disclosure of

plaintiff's arthritis, depression, and request for a COVID vaccine); Flores v. City of New York,

No. 21-CV-1680 (PGG) (KHP), 2022 WL 4705949, at *22 (S.D.N.Y. Aug. 8, 2022), report and

recommendation adopted, 2022 WL 4592892 (S.D.N.Y. Sept. 30, 2022) (dismissing right to

privacy claim based on health provider speaking loudly about plaintiff's mental-health

diagnosis); Schmiege v. Deputy of Health Henton, No. 19-CV-07229 (PMH), 2021 WL 214660,

at *3 (S.D.N.Y. Jan. 20, 2021) (dismissing right to privacy claim where "[p]laintiff's medical

conditions [of neck, head, and back injuries] are not private in nature, stigmatizing, or likely to

provoke hostility and intolerance from others").

Further, even if Plaintiff could show a privacy interest in his medical conditions, Plaintiff

has alleged no facts from which to plausibly infer that any defendant publicly disclosed

Plaintiff's medical status or disability. "Individuals have a right to privacy protecting them from

the *disclosure* of personal information." Keller v. Schoharie Cnty. Dep't of Soc. Servs., 848 F.

App'x 38, 40 (2d Cir. 2021) (summary order) (italics added) (citation omitted). Plaintiff alleges,

in conclusory fashion, that the information was "shared between agencies." ECF No. 52 at 3. But

Plaintiff does not identify which agencies the information was shared with, and nor does he

explain when the information was shared, who shared it, what information was specifically

shared, and how it became publicly available. See, e.g., Estrella, 275 F. Supp. 2d at 458

(dismissing right to privacy claim where most of the information contained in a notice was in the

public record and would "only be sent to state and local law enforcement agencies"); Devane v.

Doe, No. 20-CV-9649 (NSR), 2021 WL 1648053, at *3 (S.D.N.Y. Apr. 27, 2021) (dismissing

right to privacy claim where allegations did "suggest that [d]efendants publicly revealed *any* of

14

[p]laintiff's medical information, let alone, information that warranted confidentiality") (italics in original); Keller, 848 F. App'x at 40 (affirming dismissal of right to privacy claim where plaintiff alleged that defendants unlawfully disclosed her medical information "by stating that she had mental issues and needed to take medicine").

In sum, to the extent Plaintiff is basing his right to privacy claim on the disclosure of his name, I recommend that the claim be dismissed with prejudice. However, to the extent Plaintiff is basing his claim on the disclosure of his medical condition, I recommend that the claim be dismissed without prejudice. Plaintiff has not previously had the benefit of a court decision addressing the allegations in his complaint, and because it is not apparent that amendment would be futile, I recommend that he be granted leave to amend. Smith v. Westhab Traverse House, No. 24-CV-4961 (KMW), 2025 WL 1589422, at *4 (S.D.N.Y. June 4, 2025) ("District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend, but failed to cure the complaint's deficiencies.") (citing Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008)). If leave to amend is granted, Plaintiff should plead more facts to explain the medical condition(s) he claims to have a privacy interest in and explain how information about that condition(s) was publicly disclosed by Defendants.

### 3. *Count II: Unlawful Seizure*

Construing Plaintiff's pleadings liberally, Plaintiff is also alleging a claim that he was unlawfully seized in violation of the Fourth Amendment based on the stop that occurred on March 9. In his opposition papers, Plaintiff alleges that Defendants' request for Plaintiff's "identification was part of an unlawful seizure under the Fourth Amendment, as Defendants lacked reasonable suspicion to stop Plaintiff." ECF No. 53 at 3. However, "a request for

identification by the police does not, by itself, constitute a Fourth Amendment seizure." I.N.S. v. Delgado, 466 U.S. 210, 216 (1984); see also Florida. v. Royer, 460 U.S. 491, 497 (1983) ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen[.]"). A seizure does not occur until "by means of physical force or show of authority, a police officer detains a person such that a reasonable person would have believed that he was not free to leave." Brown v. City of Oneonta, New York, 221 F.3d 329, 340 (2d Cir. 2000) (internal quotation marks and citations omitted). The factors assessed to determine whether a seizure has occurred include:

> the threatening presence of several officers; the display of a weapon; physical touching of the person by the officer; language or tone indicating that compliance with the officer was compulsory; prolonged retention of a person's personal effects, such as airplane tickets or identification; and a request by the officer to accompany him to the police station or a police room.

United States v. Hooper, 935 F.2d 484, 491 (2d Cir. 1991) (citations omitted). For example, "a simple request for identification may not, without more, constitute a seizure, [whereas] a yelled command from a border agent might well not make a reasonable person feel free to decline the officer's request or otherwise terminate the encounter." Almeida-Amaral v. Gonzales, 461 F.3d 231, 235 n.2 (2d Cir. 2006) (internal quotation marks, citations, and alterations omitted).

Plaintiff states that "these NYPD officers" "threaten[ed] Plaintiff and h[e]ld him at gunpoint." ECF No. 23 at 4. But Plaintiff does not allege what happened leading up to this point, other than that the "NYPD officers forced Plaintiff to identify himself." Id. For example, Plaintiff does not describe whether the interaction happened on the subway train or on the platform; he does not indicate what events precipitated the officers' approach or how many officers approached him; Plaintiff does not describe what the officers told him or how long the

16

interaction lasted. He also does not discuss what his service animal was doing—whether the animal was agitated and barking or waiting calmly. There are thus no factual details to understand the context in which the interaction between Plaintiff and the officers occurred. Additionally, although Plaintiff states that he was transported (ECF No. 1 at 8; ECF No. 7 at 5), he does not provide any factual details to explain how he was transported, when he was transported, by whom he was transported, and where he was taken. In short, there are no facts from which to assess the propriety of the seizure Plaintiff alleges occurred on March 9. Moskowitz v. Great Neck Union Free Sch. Dist., No. 20-CV-1659 (KAM) (SIL), 2021 WL 4268138, at *17 (E.D.N.Y. Aug. 4, 2021), report and recommendation adopted, 2021 WL 3878777 (E.D.N.Y. Aug. 31, 2021) ("Based on the facts asserted, the Court cannot, on a motion to dismiss, determine whether this alleged seizure was justified or reasonably related in scope to justifying circumstances.").

Plaintiff also alleges that the "use of force against Plaintiff's service animal constitutes an unconstitutional seizure of property." ECF No. 53 at 4. Although the Second Circuit has determined that "the unreasonable killing of a companion animal constitutes an unconstitutional 'seizure' of personal property under the Fourth Amendment," Carroll v. Cnty. of Monroe, 712 F.3d 649, 651 (2d Cir. 2013) (per curiam), it has not decided whether the nonfatal wounding of a service animal would constitute a seizure. Cox v. City of Rochester, No. 22-CV-6207, 2025 WL 50340, at *3-4 (W.D.N.Y. Jan. 8, 2025) (finding that "the nonfatal wounding of a dog can be an unconstitutional seizure" but noting that "all of the decisions cited by the Second Circuit involved cases where a dog died as a result of the shooting").

Regardless, even if the nonfatal wounding of Plaintiff's service animal could constitute a seizure, Plaintiff has not alleged that his service animal was wounded during the incident.

Instead, Plaintiff alleges that "the officers" "chok[ed] the animal with a rod and rope" causing the animal "pain." ECF No. 23 at 4. Plaintiff does not provide further details regarding the injuries, if any, his dog sustained due to the choking. Additionally, Plaintiff has not provided any facts concerning the circumstances surrounding the stop and the animal's role during that stop. For instance, we do not know whether the service animal was on the subway train or on the subway platform, whether the animal was on a leash, whether the animal was agitated, or whether the animal acted aggressively towards the officers or other passengers. See Carroll, 712 F.3d at 651 ("To determine whether a seizure is unreasonable, a court must . . . determine whether the totality of the circumstances justified the particular sort of seizure.") (internal quotation marks, citation, and alterations omitted); Azurdia v. City of New York, No. 18-CV-04189 (ARR) (PK), 2019 WL 1406647, at *7 (E.D.N.Y. Mar. 28, 2019) (finding plaintiff properly alleged seizure of dog who was killed where "[j]ust before the shooting, [the dog] was quiet, calm, and did not bark, lunge, or exhibit any behavior that could be considered aggressive or threatening" and was "shot inside plaintiffs' apartment," not "while running loose in public").

I therefore recommend that Plaintiff's unlawful seizure claim be dismissed, but that Plaintiff be afforded an opportunity to amend. Plaintiff may be able to state a proper claim if, as described above, he is able to provide additional facts regarding his encounter with the Individual Officers. Jordan v. New York State Dep't of Lab., 811 F. App'x 58, 60 (2d Cir. 2020) (citing Hill v. Curcione, 657 F.3d 116, 123-24 (2d Cir. 2011)) ("*Pro se* plaintiffs are generally afforded an opportunity to amend, unless amendment would be futile.").

### 4. *Count III: Excessive Force*

In Count III, Plaintiff alleges that "Defendants" used excessive force against him and his service animal by "choking the animal with a rod and rope, holding Plaintiff at gunpoint, and

18

causing him physical injury," including a "strain and numbness" in Plaintiff's "left wrist to his neck requiring therapy." ECF No. 53 at 4. In determining whether excessive force was used against Plaintiff, the Supreme Court requires that "all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment 'reasonableness' standard." Graham v. Conner, 490 U.S. 386, 395 (1989); Linton v. Zorn, 135 F. 4th 19, 31 (2d Cir. 2025) (citing Tolan v. Cotton, 572 U.S. 650, 656 (2014)). In deciding whether or not the amount of force used is reasonable, a court must consider "the totality of the circumstances faced by the officer on the scene." Lennon v. Miller, 66 F.3d 416, 425 (2d Cir. 1995) (citiation omitted). The proper inquiry is "whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him or her, without regard to his or her underlying intent or motivation." Graham, 490 U.S. at 397. To sustain a claim for excessive force, the alleged force must be "objectively sufficiently serious or harmful enough" to be actionable. United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999). However, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment[.]" Graham, 490 U.S. at 396 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). Therefore, Plaintiff must plead that the amount of force used was more than de minimus. Romano v. Howarth, 998 F.2d 101, 105 (2d. Cir. 1993); see also Maxwell v. City of New York, 272 F. Supp. 2d 285, 298 (S.D.N.Y. 2003). An officer will violate a person's Fourth Amendment rights "by employing a degree of force beyond that which is warranted by the objective circumstances of an arrest." Cugini v. City of New York, 941 F.3d 604, 612 (2d Cir. 2019).

Plaintiff must allege that the force used against him was objectively unreasonable in light of the totality of the circumstances. Plaintiff claims that the "NYPD officers forced Plaintiff to

19

identify himself" (ECF No. 23 at 4), did not show identification (id.), "approached Plaintiff with firearms" (id.), issued a summons (id.), "held him at gunpoint" (ECF No. 53 at 4), "used physical force, causing pain to Plaintiff and his service animal" (ECF No. 23 at 4), and transported him and his service animal "to a different location," where Plaintiff was "injected with a substance without consent" (id.). Plaintiff, however, provides no factual allegations from which to understand the totality of the circumstances to determine whether the force used by the officers was reasonable. For example, Plaintiff does not describe what he was doing before the officers approached. He does not explain how he or his service animal reacted to the officers. We do not know whether this transpired on a subway platform or inside a subway car that was in transit. Nor do we know whether this encounter occurred on a crowded platform or train, or how many officers were involved in the interaction. See, e.g., Scales v. New York Police Dep't, No. 23-CV-9116 (LTS), 2023 WL 8478958, at *3 (S.D.N.Y. Dec. 7, 2023) (dismissing excessive-force claim where plaintiff did "not provide enough factual context going to the totality of the circumstances to allow the court to apply the reasonable standard under section 1983"); Washington v. New York Police Dep't, No. 23-CV-5820 (LTS), 2023 WL 5055035, at *3 (S.D.N.Y. Aug. 8, 2023) (concluding that plaintiff's allegations did "not provide enough factual context to state a claim under Section 1983 for a violation of her right under the Fourth Amendment to be free from excessive force"); Aigbekaen v. Warden of FCI Danbury, No. 21-CV-1526, 2022 WL 1658819, at *2 (D. Conn. May 25, 2022) (dismissing excessive-force claim where plaintiff "does not plead the factual context necessary to support his claim that the use of force was excessive [ ] apart from his allegation of serious injury").

Defendants argue that Plaintiff fails to state an excessive-force claim because "Plaintiff fails to allege any injury beyond temporary discomfort." ECF No. 26 at 14; ECF No. 48 at 15.

20

But "[a] plaintiff need not always sustain lasting injuries to state a claim for excessive force." Bey v. Ferdinand, No. 24-CV-6684 (LLS), 2025 WL 1505041, at *6 (S.D.N.Y. May 21, 2025) (citing Graham v. City of New York, 928 F. Supp. 2d 610, 618 (E.D.N.Y. 2013)). And in any event, Plaintiff has alleged a lasting injury; he alleges that he suffered "strain and numbness" from his wrist to his neck, which required therapy, and Plaintiff was "still experiencing numbness from his left wrist [ ] to his neck region" as of the filing of the complaint. ECF No. 53 at 4. Plaintiff has alleged an injury "beyond temporary discomfort." See, e.g., Davidson v. Flynn, 32 F.3d 27, 29-31 (2d Cir. 1994) (reversing district court's dismissal of excessive-force claim where handcuffs on plaintiff "cut into [his] flesh and reduce[d] circulation and cause[d] swelling" as well as "a scar and numbness" in the right ankle and numb wrists "for several months"); Jones v. Westchester Cnty., 182 F. Supp. 3d 134, 153 (S.D.N.Y. 2016) (finding excessive-force claim adequately alleged where plaintiff claimed "severe pain that ultimately resulted in the need for physical therapy and medication"); Burris v. Nassau Cnty. Dist. Att'y, No. 14-CV-5540 (PKC) (GRB), 2022 WL 889027, at *4 (E.D.N.Y. Mar. 25, 2022) (denying motion to dismiss excessive-force claim where plaintiff alleged injuries "requiring immediate medical treatment and physical therapy, including back pain, head trauma, and numbness of his fingers and wrist") (internal quotation marks, citation, and alterations omitted).

Plaintiff also alleges that excessive force was used against his service animal. ECF No. 23 at 5. But only "people" are protected by the Fourth Amendment prohibition against excessive force. Fincher v. City of New York, No. 19-CV-6206 (MKV), 2021 WL 4461161, at *5 (S.D.N.Y. Sept. 29, 2021) ("The Fourth Amendment protects *people* from the use of excessive force by police during an arrest.") (italics added); Strong v. Perrone, No. 17-CV-6183, 2018 WL 324421, at *5 (W.D.N.Y. Jan. 8, 2018) ("[T]he Fourth Amendment protects the right of the

21

*people* to be free from unreasonable searches and seizures—it does not safeguard any independent right for dogs, which are considered property for purposes of the Fourth Amendment.") (internal quotation marks and citation omitted) (italics in original). Plaintiff therefore cannot state a Fourth Amendment excessive-force claim for force used against his service animal.

In sum, I recommend that Plaintiff's Section 1983 claim alleging excessive force in Count III based on the choking of his dog be dismissed with prejudice. However, I recommend that Plaintiff's excessive-force claim for injuries he personally suffered be dismissed with leave to amend. If Plaintiff is granted leave to amend, he should include factual details consistent with those discussed herein.

     5.   *Count IV: False Arrest*

In Count IV, Plaintiff asserts a false-arrest claim, alleging that he was "detained, handcuffed, and transported to another location without probable cause." ECF No. 53 at 4. "A §1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999) (citation omitted). "[U]nder New York law, the elements of a false arrest claim are: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Maron v. Cnty. of Albany, 166 F. App'x 540, 541 (2d Cir. 2006) (citing Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995)). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." Id. (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). "An officer has probable

cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006) (internal quotation marks and citations omitted).

Defendants contend that Plaintiff provides no factual basis from which to plausibly infer that his arrest lacked probable cause. ECF No. 26 at 17; ECF No. 48 at 17-18. But "[w]here 'an arrest is not made pursuant to a judicial warrant, the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense.'" Bonano v. Grant, No. 25-CV-2808 (LTS), 2025 WL 2307592, at *6 (S.D.N.Y. Aug. 11, 2025) (quoting Mitchell v. City of New York, 841 F.3d 72, 77 (2d Cir. 2016)). Defendants may be able to meet this burden "on a pre-answer motion to dismiss where probable cause 'appears on the face of the complaint,' in that 'facts admitted in the complaint . . . establish each of the elements of the crime.'" Frederick v. City of New York, No. 13-CV-897 (MKB), 2016 WL 8711395, at *12 (E.D.N.Y. Mar. 25, 2016) (quoting Silver v. Kuehbeck, 217 F. App'x 18, 22 (2d Cir. 2007)).

However, as discussed above, Plaintiff does not allege facts from which to understand the circumstances of Plaintiff's arrest. He has thus failed to state a claim for false arrest. See Etuk, 2025 WL 1785958, at *5 (dismissing false-arrest claim where "[p]laintiff does not include any facts regarding the circumstances of his arrest"); Rodriguez v. Sky, 605 W 42 St Owner LLC, No. 23-CV-8034 (LTS), 2023 WL 7305147, at *3 (S.D.N.Y. Nov. 6, 2023) (dismissing false-arrest claim where plaintiff "does not state any facts detailing the[] arrests or the circumstances that led to his being arrested"); Kirby v. Abraham, No. 24-CV-0522, 2024 WL 4906112, at *5 (N.D.N.Y. Oct. 25, 2024) (dismissing false-arrest claim where "[p]laintiff alleges in wholly conclusory fashion he was subject to a false arrest and false imprisonment").

23

Further, as discussed above, Plaintiff has not alleged the personal involvement of any Individual Officer. Garnett v. City of New York, No. 13-CV-7083 (GHW), 2014 WL 3950904, at *7 (S.D.N.Y. Aug. 13, 2014) (citing Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013)) (dismissing false-arrest claim where defendant was not personally involved because "[a]bsent any personal involvement, an individually-named defendant cannot be held liable for a plaintiff's alleged § 1983 claim"). It is thus not apparent from the facts in the complaint which defendant or defendants arrested Plaintiff. Consequently, I recommend that Plaintiff's false-arrest claim be dismissed with leave to amend because it is not evident that Plaintiff will be unable to include factual allegations to plausibly state a claim.

6. *Count VI: Due Process Violation*

In Count VI, Plaintiff asserts a claim for a violation of his due process rights, alleging that "Defendants' actions deprived Plaintiff of liberty and property without due process of law." ECF No. 1 at 10. However, there are no factual allegations in Plaintiff's second amended complaint distinct from the facts concerning the alleged unlawful stop on March 9. And a "procedural due process claim cannot be predicated upon the same factual basis as [a plaintiff's] Fourth Amendment false arrest and false imprisonment claims." Levantino v. Skala, 56 F. Supp. 3d 191, 203 (E.D.N.Y. 2014) (collecting cases). Because Plaintiff's due process claim rests on the same facts as his Fourth Amendment false arrest and imprisonment claims, the due process claim must be dismissed with prejudice. Fernandez-Bravo v. Town of Manchester, 711 F. App'x 5, 8 (2d Cir. 2017) ("Because [plaintiff's] due process claim stems from the same behavior alleged in his Fourth Amendment false arrest claim, his substantive due process claim merges with that claim[.]").

However, to the extent that Plaintiff's due process claim is also based on the "unauthorized injection of a substance into his body" (ECF No. 52 at 5), this would be a proper basis upon which he can proceed with a due process claim. The Fourteenth Amendment protects the right of a competent person to refuse unwanted medical treatment. See, e.g., Cruzan v. Dir., Mo. Dep't of Health, 497 U.S. 261, 278 (1990) (recognizing "[t]he principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment"). A state actor forcibly medicating a patient is unconstitutional "absent a finding of overriding justification and a determination of medical appropriateness" by a medical professional. Riggins v. Nevada, 504 U.S. 127, 135 (1992); see Washington v. Harper, 494 U.S. 210, 221-22 (1990) (recognizing a prisoner's "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment").

Plaintiff alleges that he was injected with an unknown substance after "Plaintiff and his service animal were transported to a different location." ECF No. 23 at 4. But Plaintiff does not indicate who injected him, where he was injected, and he does not describe the factual circumstances leading up to the alleged injection. If the injection was administered by one of the Individual Officers, Plaintiff may be able to state a claim. Cf. Pacicca v. Stead, No. 06-CV-4347 (CS) (GAY), 2008 WL 11517390, at *11 (S.D.N.Y. Dec. 5, 2008), report and recommendation adopted in part, rejected in part, 2009 WL 10675921 (S.D.N.Y. June 17, 2009) (noting that officers "followed police department policy which forbids officers from administering medications to arrestees" when they refused arrestee his requested medication). Plaintiff may also be able to state a claim if the injection came from a medical professional. But Plaintiff would need to provide additional factual allegations. For example, Plaintiff needs to identify who administered the substance, where the substance was administered, what substance was

administered, what events transpired leading up to the substance being injected, and whether Plaintiff stated his refusal to have the substance administered. Banks v. Bellevue Hosp., No. 24-CV-0369 (LTS), 2024 WL 3676930, at *5 (S.D.N.Y. Aug. 6, 2024), appeal dismissed sub nom. by, Banks v. Bellvue Hosp., No. 24-2452, 2025 WL 2714222 (2d Cir. Mar. 20, 2025). Thus, I recommend that Plaintiff's due process claim based on the injection of a substance be dismissed with leave to amend.

B.  Count V: Violation of the Americans with Disabilities Act

In Count V, Plaintiff asserts a claim for a violation of the ADA, because he contends that his arrest and detention were discriminatory. ECF No. 1 at 10. He alleges that "the officers' refusal to accommodate his disability and their violent response to his legitimate use of a service animal constitute[s] discrimination." ECF No. 52 at 6.

To the extent Plaintiff asserts this claim against the Individual Officers, there is no individual liability under Title II of the ADA. See Andino v. Fischer, 698 F. Supp. 2d 362, 380 (S.D.N.Y. 2010). Accordingly, I recommend that Plaintiff's ADA claims against the Individual Officers be dismissed with prejudice.

The City, however, "may be held vicariously liable for violations of Title II of the ADA . . . committed by their agents." Morales v. City of New York, No. 13-CV-07667 (RJS), 2016 WL 4718189, at *7 (S.D.N.Y. Sept. 7, 2016); see also Palmer v. City of Yonkers, 22 F. Supp. 2d 283, 287 (S.D.N.Y. 1998) ("[G]eneral vicarious liability principles apply under the ADA."). Accordingly, Plaintiff may be able to state a claim against the City, based upon principles of vicarious liability, for the conduct of the Individual Officers.

Title II of the ADA prohibits the exclusion of a "qualified individual with a disability" from "the benefits of the services, programs, or activities of a public entity" or "discrimination

by any such entity." 42 U.S.C. § 12132. To assert a claim under Title II, "a plaintiff must demonstrate (1) that [he] is a qualified individual with a disability; (2) that [he] was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [his] disability." Tardif v. City of New York, 991 F.3d 394, 404 (2d Cir. 2021) (quoting Davis v. Shah, 821 F.3d 231, 259 (2d Cir. 2016)).

A qualified individual is "an individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Further, an individual has a disability under the ADA if he has "a physical or mental impairment that substantially limits one or more major life activities," a "record of such impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). "A complaint alleging a violation of the ADA must identify the life activity substantially impaired." Kaplan v. Garfield First Assocs., LLC, No. 11-CV-04631 (RRM) (LB), 2011 WL 4530025, at *3 (E.D.N.Y. Sept. 27, 2011) (citing Weixel v. Bd. of Educ., 287 F.3d 138, 147 (2d Cir. 2002)). In the alternative, if a plaintiff does not demonstrate a limitation of a major life activity, the plaintiff still may be "regarded as" having a disability if the plaintiff can "establish that defendant regarded him as having a mental or physical impairment[.]" Rodriguez v. Verizon Telecom, No. 13-CV-06969 (PKC), 2014 WL 6807834, at *5 (S.D.N.Y. Dec. 3, 2014).

In matters involving law enforcement and disabled individuals, "courts typically treat Title II claims under either the wrongful arrest or failure to reasonably accommodate umbrellas." Felix v. City of New York, 344 F. Supp. 3d 644, 663 (S.D.N.Y. 2018). For a wrongful-arrest claim, a plaintiff must demonstrate that he was arrested because the police officer "misperceived

27

the effects of [his] disability as criminal activity." See Anthony v. City of New York, No. 00-CV-04688 (DLC), 2001 WL 741743, *11 (S.D.N.Y. July 2, 2001), aff'd by, 339 F.3d 129 (2d Cir. 2003) (citation omitted). A plaintiff claiming a failure to accommodate during an arrest must show that law enforcement's failure to reasonably accommodate his disability caused him to "suffer greater injury or indignity in that process than other arrestees." See Bobbit v. Marzan, No. 16-CV-02042 (AT), 2020 WL 5633000, at *16 (S.D.N.Y. Sept. 21, 2020) (internal quotation marks and citation omitted). Courts assess these claims "in light of the totality of the circumstances of the particular case." Williams v. City of New York, 121 F. Supp. 3d 354, 365 (S.D.N.Y. 2015).

Construing Plaintiff's allegations liberally, Plaintiff has alleged that he is a qualified individual with a disability and that the Individual Officers regarded him as having a disability due to the presence of his service animal. Plaintiff states that he suffers from a "severe visual impairment and PTSD" (ECF No. 52 at 6) and that he has a service animal (ECF No. 1 at 8). At the motion to dismiss stage, these allegations are sufficient to establish Plaintiff was, or was regarded as, an individual with a disability. Etuk, 2025 WL 1785958, at *9 (finding plaintiff had alleged he was a qualified individual under the ADA where plaintiff's PTSD and astigmatism "severely impact his mobility and safety" and that plaintiff's pleadings "alleging that the arresting officers interaction with his service animal demonstrates that [p]laintiff was 'regarded as' having a disability"); Kane v. City of New York, No. 22-CV-1339 (KAM) (LB), 2022 WL 17553307, at *5 (E.D.N.Y. Dec. 9, 2022) ("Although [p]laintiff does not allege any facts establishing that [the officer defendant] regarded her as having PTSD, the Court liberally construes the complaint to allege that his reference to her service animal establishes that she was 'regarded as' having a disability.").

28

However, Plaintiff has not alleged sufficient facts to plausibly allege that he was discriminated against because of his disability. There are no facts from which to plausibly infer that Plaintiff was wrongfully arrested because of his disability. Nor are there any facts from which to infer that the Individual Officers "misperceived the effects of [Plaintiff's] disability as criminal activity." Anthony, 2001 WL 741743, *11. Moreover, Plaintiff has not provided facts to suggest that the Individual Officers failed to reasonably accommodate his disability during the arrest. Plaintiff only states that Defendants' "arrest and detention of Plaintiff and his registered service animal, who was providing essential services at the time, constituted discrimination under the ADA." ECF No. 7 at 10. But that conclusory allegation, without any factual support, does not suffice to state a claim against the City.

I therefore recommend that Plaintiff's ADA claim be dismissed and that Plaintiff be afforded leave to amend his claim against the City, because it is not apparent that amendment would be futile.

C.   Plaintiff fails to allege a Section 1983 claim against the City of New York.

The City argues that Plaintiff cannot allege any Section 1983 claim against it because the City cannot be held vicariously liable for the conduct of the Individual Officers. ECF No. 26 at 18-20. Under Monell, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978). Instead, a plaintiff must show a constitutional deprivation and "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Bohmer v. New York, No. 06-CV-11370 (KTD), 2011 WL 2651872, at *3 (S.D.N.Y. June 16, 2011) (internal quotation marks and citation omitted). Merely providing "[p]roof of a single incident of unconstitutional activity" is insufficient to impose municipal liability, "unless proof of the incident includes proof

29

that it was caused by an existing, unconstitutional municipal policy." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985) (plurality opinion); see also Cowan v. City of Mount Vernon, 95 F. Supp. 3d 624, 637 (S.D.N.Y. 2015) ("Generally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality.") (internal quotation marks omitted); Guerrero v. City of New York, No. 12-CV-2916 (RWS), 2013 WL 673872, at *3 (S.D.N.Y. Feb. 25, 2013) ("[B]oilerplate assertions of a municipal policy or custom . . . without offering any accompanying factual support . . . are insufficient to state a claim for [municipal] liability.").

Here, for the reasons already discussed, Plaintiff has failed to allege a violation of a constitutional right. That alone sinks his claim against the City. See, e.g., Corsini v. Brodsky, No. 13-CV-2587 (LTS) (MHD), 2015 WL 3456781, at *10 (S.D.N.Y. May 27, 2015) ("Plaintiff has failed to state a claim for a violation of his constitutional rights and, therefore, his *Monell* claim against New York City also must be dismissed."). Nevertheless, even if Plaintiff had pled a constitutional violation, Plaintiff has not pled the existence of any custom or policy by the City that caused the constitutional deprivation; he relies solely on a single incident involving the Individual Officers.

For example, Plaintiff has not alleged that the Individual Officers acted pursuant to a policy or custom by the City that led to any violation of his constitutional rights. Instead, he merely states in conclusory fashion without factual support that the incident here is part of a "well-documented history of NYPD misconduct." ECF No. 52 at 5. But Plaintiff has not provided any factual allegations to support the existence of a policy, pattern, practice, or custom by the City. Nor has Plaintiff alleged facts from which it could plausibly be inferred that the conduct of the Individual Officers occurred because the City was deliberately indifferent by

30

failing to train or supervise its police officers. Plaintiff's allegations are thus insufficient to state a Monell claim against the City. Rodriguez v. City of New York, No. 10-CV-4404 (PAE), 2012 WL 234380, at *4 (S.D.N.Y. Jan. 24, 2012) (dismissing Monell claim where "complaint described only the conduct of individual employees of the City of New York"); Kneitel v. City of New York, No. 15-CV-6811 (NGG) (LB), 2016 WL 4581293, at *3 (E.D.N.Y. Aug. 31, 2016) (dismissing Monell claim because "although Plaintiff names the City of New York as a defendant, the Complaint's factual allegations do not mention the City of New York.").

Thus, I recommend that Plaintiff's claims against the City be dismissed without prejudice. See Fantozzi v. City of New York, 343 F.R.D. 19, 33 (S.D.N.Y. 2022) (dismissing Monell claim with leave to amend because "the Court cannot conclude now that [p]laintiff could not amend his pleadings to assert a colorable claim").

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Plaintiff's Second Amended

Complaint be dismissed, and that leave to amend be granted for the claims specified herein.

DATED:      New York, New York
            January 2, 2026

_____
VALERIE FIGUEREDO
United States Magistrate Judge

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the Honorable Jennifer H. Rearden. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).**